CHARLES E. ORVIS, Appellant, v. WILLIAM H. CURTISS,. Respondent.

1. USURY — BASIS OF DEFENSE. The defense of usury must be founded upon a loan or forbearance of money.

2. CONTRACT OF PARTNERSHIP NOT A LOAN. An agreement between two parties which imports the formation of a partnership, such as a joint venture in the purchase and sale of stocks, is not converted from a contract in the nature of partnership into a loan of money by the fact that one party guarantees the other against loss on the capital advanced by him and that his profits shall amount to.a certain sum; and the defense of usury is not applicable thereto.

*Orvis* v. *Curtiss*, 12 Misc. Rep. 434, reversed.

(Argued December 5, 1898; decided January 10, 1899.)

APPEAL, by permission, from an order of the General Term of the late Court of Common Pleas for the city and county of . New York, entered May 10, 1895, reversing a judgment of a District Court of the city of New York in favor of plaintiff, and granting a new trial.

The nature of the action and the facts, so far as material,. are stated in the opinion.

*Herman Aaron* for appellant. The transaction between. the parties was a partnership transaction and not a loan. (17 Am. & Eng. Ency. of Law, 854; *Musier* v. *Trumpbour*, 5 Wend. 275; *Munro* v. *Whitman*, 8 Hun, 553; *Richards* v.. *Grinnell*, 63 Iowa, 44; *Reid* v. *Hollinshead*, 4 B. & C. 867;. Lindley on Part. 1, 6; Story on Part. § 81; *Walden* v. *Sherburne*, 15 Johns. 409; *Hackett* v. *Stanley*, 115 N. Y. 629.) The fact that Curtiss guaranteed Orvis against loss and further guaranteed that the profits accruing to Orvis would be $5,000,. does not derogate from the agreement as a partnership. (*Hackett* v. *Stanley*, 115 N. Y. 629; *Clift* v. *Barrow*, 108. N. Y. 187.) It cannot be claimed that the agreement in question was a device to cover up a loan of money since there is no evidence to that effect. (*L. I. Bank* v. *Boynton*, 105. N. Y. 656; *Baldwin* v. *Doying*, 114 N. Y. 457; *Meaker* v..

*Fiero*, 145 N. Y. 165.) As there is no evidence of the loan of money by Orvis to Curtiss, or of forbearance respecting the same, there can be no usury. (*Meaker* v. *Fiero*, 145 N. Y. 165; *Scheidig* v. *Bemis*, 34 N. Y. S. R. 993.) The transactions between the parties being partnership transactions, usury cannot be predicated upon them. (26 Am. & Eng. Ency. of Law, 1016; *Silver* v. *Barnes*, 6 Bing. [N. C.] 180; *Burbridge* v. *Cotton*, 3 Eng. L. & Eq. 57; *Payne* v. *Freer*, '91 N. Y. 43.) The defense of usury cannot be availed of as it was not pleaded. (*Volkening* v. *De Graaf*, 81 N. Y. 272; *Bate* v. *Graham*, 11 N. Y. 237; *McGinniss* v. *Mayor, etc.*, 6 Daly, 420.)

*Abram I. Elkus* for respondent. The contract was designed by the plaintiff as a cloak or scheme to obtain usurious interest and should not be permitted to succeed. The law does not favor or permit any such device. (4 R. S. [8th ed.] ch. 4, tit. 3, §§ 1, 2, 5; 3 Pars. on Cont. 108, 112; *K. L. Ins. Co.* v. *Nelson*, 78 N. Y. 139; *Colton* v. *Dunham*, 2 Paige, 267; *Cleveland* v. *Loder*, 7 Paige, 557; *Braynard* v. *Hoppock*, 32 N. Y. 571; *Browne* v. *Vredenburgh*, 43 N. Y. 195; 27 Am. & Eng. Ency. of Law, 924; Tyler on Usury, 102; *Freeport Bank* v. *Hagemeyer*, 91 Hun, 194; *Goldman* v. *Uhlmann*, 16 App. Div. 324.) Where one is only interested in the profits, as compensation for the loan of money as between the parties, he is not a partner. (*Richardson* v. *Hughitt*, 76 N. Y. 55; *Curry* v. *Fowler*, 87 N. Y. 38; *Cassidy* v. *Hall*, 97 N. Y. 158; *Burnett* v. *Snyder*, 81 N. Y. 555; *Leggett* v. *Hyde*, 58 N. Y. 272; *M. Nat. Bank* v. *Barnes*, 32 App. Div. 92; *F. Nat. Bank* v. *Gallaudet*, 122 N. Y. 655.) The usurious agreement being illegal, the note in suit, given in pursuance thereof, is tainted with the same illegality. (*Claflin* v. *Boorum*, 122 N. Y. 385; *Treadwell* v. *Archer*, 76 N. Y. 196; 13 Am. & Eng. Ency. of Law, 967, 968; *Goldman* v. *Uhlmann*, 16 App. Div. 324.) The defense of usury was pleaded. (12 Ency. of Pl. & Pr. 721, 723; *Ross* v. *Hamilton*, 3 Barb. 609; *Crane* v. *Hardman*, 4 E. D. Smith, 448.)

O'BRIEN, J.  This action was originally brought in a District Court of the city of New York to recover one hundred dollars, being six months' interest upon a promissory note of four thousand dollars, made by the defendant on the third day of January, 1893, and payable to the order of the plaintiff three years after date, with semi-annual interest at five per cent.  While the action nominally involves only the interest on this note for six months, yet it in effect, from the nature of the defense, involves the right of the plaintiff to recover the principal sum, as well as the interest.  The pleadings in the trial court were oral, and, consequently, quite informal.  The defense was in substance a general denial, want of consideration and usury.

The origin of the note was as follows: On the third of January, 1887, the plaintiff, who is a member of a firm of stockbrokers, and defendant entered into a written agreement for the purpose of purchasing in the market and carrying five hundred shares of the capital stock of the American Cotton Oil Trust.  By this instrument it was agreed: (1) That a joint account should be opened with the firm of brokers of which the plaintiff was a member, in which the plaintiff and defendant should be equally interested; that upon their joint order, or the order of the defendant, the account might purchase or sell at any time any portion of five hundred shares of the stock, but at no time in excess of that amount.  The defendant agreed to furnish at once to the plaintiff's firm such sums of money as might represent the difference between the price paid for the stock and forty-five per cent of the par value.

(2) The plaintiff guaranteed that the account should be carried for the period of six months from date, and agreed to furnish forty-five hundred dollars for each one hundred shares, the account to be closed up and settled in full on or before July 3rd, 1887.  The plaintiff also agreed to set aside with his firm the necessary money to pay for the stock whenever called upon for that purpose, the account to pay to plaintiff's firm interest at six per cent from the date of the agreement, besides broker's commissions on each transaction.  (3) It was

also stipulated between the parties that such net profits as might accrue to the account by reason of the transaction should be equally divided, but the defendant guaranteed that the share of the profits of the plaintiff should not be less than five thousand dollars, and agreed, further, that when the account was closed he would pay over and make good to the plaintiff any deficiency in the account for that purpose, so that the plaintiff should, within the period of six months from the date of the agreement, receive either from the account or from the defendant, as guarantor, the sum of not less than five thousand dollars.

· It will be seen that the plaintiff was, by the terms of this instrument, secured from all loss, and not only that, but the defendant expressly guaranteed that his profits should not be less than five thousand dollars. There was, in fact, a large loss in the transaction, amounting to about eleven thousand dollars, which, it is conceded, the defendant paid. The account remained unsettled until about the time of the execution of the note in controversy, and then there appeared to be due to the plaintiff, under the terms of the contract, $7,800. The parties agreed to settle and compromise this claim by the execution and delivery of the note in question, and that it was given to settle and adjust the plaintiff's claim, originating as above stated, is not disputed.

Waiving the question whether the note in controversy was not executed and delivered in pursuance of an accord and satisfaction between the parties, based upon a disputed claim, the defense of usury, which constituted the ground upon which the learned court below reversed the judgment, must be considered. It is proper to observe at the outset that there is no proof in the record of any preliminary negotiations to show that the agreement was not intended for the purpose indicated upon its face, but as a mere device or subterfuge to conceal a loan of money. ·A transaction of this character may be assailed as a device to cover a usurious loan ; and when facts· and circumstances are established to warrant a finding that such was its purpose, it is quite possible that the

defense of usury could be sustained. But in this case, not only is the testimony to support such a theory absent, but it appears that since the trial court rendered judgment in favor of the plaintiff, the existence of such facts was expressly negatived. The order of the General Term reversing the judgment does not appear to have been founded upon the facts, and hence we must presume that it was upon the law. Therefore, the only question that is before us for review is whether the agreement referred to, and out of which the claim compromised and represented by the note grew, was, as matter of law, usurious.

It is a fundamental doctrine governing the law of usury that the defense must be founded upon a loan or forbearance of money. If neither of these elements exists there can be no usury, however unconscionable the contract may be. The law declares that no one shall loan money, exacting for its use more than legal interest, or, having loaned money, he shall not exact a greater rate as a condition of postponing payment. (*Meaker* v. *Fiero*, 145 N. Y. 165.) There must exist, in fact or in law, a corrupt purpose or intent on the part of the person who takes the security to secure an illegal rate of interest for the loan or forbearance of money. There must be a lender and a borrower, and it must appear that the real purpose of the negotiations and transactions was, on the one side to loan money at usurious interest reserved in some form by the contract, and on the other side to borrow upon the usurious terms dictated by the lender. These principles governing the law of usury are so well settled that it is unnecessary to cite authorities in support of them. I think it is impossible to find these conditions in the transaction in question. It is plain that the defendant's purpose was not to borrow money, but to deal in stocks. There is no proof or claim in the record that he ever applied to the plaintiff for a loan. He did apply to him for the purpose of entering into a joint transaction to speculate in property. There is nothing in the case to warrant the assertion that the plaintiff intended, by entering into the transaction, to loan money to the defend-

ant in the sense in which such transactions are commonly
understood. The plaintiff's purpose was to buy stocks at the
defendant's risk, securing to his firm the brokerage commis-
sions and the interest on the investment. He took care also
to make such an agreement with the defendant as would
exempt him from all possible loss, and not only that, but
should secure to him a large profit. He may have made a
hard and unconscionable bargain with the defendant, but it is
evident that both parties dealt with each other at arms' length,
and whatever else may be said about the transaction the usury
statute has no application whatever to it. It was a joint ven-
ture or partnership between two persons to deal in property
in order to make profit. One of them was more cautious than
the other, and not only protected himself by the terms of the
contract against the uncertain fluctuations of the stock market,
but stipulated that whether the stock went up or down he
should be guaranteed a profit in the transaction. The defend-
ant relied entirely upon the fluctuations of the market, and he
not only lost by these fluctuations, but by his confidence that
the stock would have a large advance, which was no doubt
his reason for so doing, guaranteed to the broker a profit
of at least five thousand dollars. If there had been a
large profit in the transaction instead of a loss, no one,
I think, could then assert that the parties were not entitled
to share in these profits equally. Certainly the plaintiff
could not then allege that the defendant was not entitled
to share in the profits for the reason that the transaction
was a simple loan of money. An agreement between two
parties to enter into a joint venture in the purchase or
sale of stocks or other property is a very common trans-
action. The fact that one of them may have advanced
the capital and the other has agreed that, in consideration of
such advance, he should participate more largely in the profits,
does not convert such an agreement into a loan of money or
conflict with the statute against usury. The contract is still
one of partnership. (*Clift* v. *Barrow*, 108 N. Y. 187;
*Hackett* v. *Stanley*, 115 N. Y. 629; *Curry* v. *Fowler*, 87 N.

Y. 38; *Richardson* v. *Hughitt*, 76 N: Y. 55; *Leggett* v. *Hyde*, 58 N. Y. 272; *Reid* v. *Hollinshead*, 4 B. & C. 867; *Richards* v. *Grinnell*, 63 Iowa, 44; *Musier* v. *Trumpbour*, 5 Wend. 275.) The defense of usury involving crime and forfeiture is not applicable to such transactions. For these reasons the order of the General Term should be reversed, and the judgment of the trial court affirmed, with costs.

All concur, except GRAY, J., dissenting, and HAIGHT, J., not voting.

Order reversed and judgment accordingly.